# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:19-CR-719-S2** |
| | § | |
| **JOSEPH COHEN,** | § | |
| **Defendant** | § | |

## <u>PLEA AGREEMENT</u>

The United States of America, by and through Jennifer B. Lowery, United States Attorney for the Southern District of Texas, Kimberly A. Leo and Sherri L. Zack, Assistant United States Attorneys, and James E. Burke IV, Trial Attorney, Child Exploitation and Obscenity Section, and the defendant, Joseph Cohen ("Defendant"), and Defendant's counsel, John T. Floyd, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Counts 1 and 2 of the Second Superseding Indictment. Count 1 charges Defendant with **Conspiracy to Receive and Distribute Child Pornography**, in violation of Title 18, United States Code, Sections 2252A(a)(2) and 2252A(b)(1). Count 2 charges Defendant with **Conspiracy to Advertise Child Pornography**, in violation of Title 18, United

States Code, Sections 2252(d) and (e).   Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2.   The statutory maximum penalty for each violation of Title 18, United States Code, §§ 2252A(a)(2) and 2252A(b)(1), is a term of imprisonment of not less than 5 years and not more than 20 years and a fine of not more than $250,000.00. The statutory maximum penalty for each violation of Title 18, United States Code, §§ 2251(d) and (e), is a term of imprisonment of not less than 15 years nor more than 30 years and a fine of not more than $250,000.00.   Additionally, under both Counts 1 and 2, Defendant may receive a term of supervised release after imprisonment of no less than 5 years and up to life.   See Title 18, United States Code, sections 3559(a)(3) and 3583(k).   The Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation.   *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(k).   Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3.    Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.   The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

4.    Pursuant to Title 18, United States Code, Section 3014(a)(3), if the court determines that the Defendant is a non-indigent person, the Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of five thousand dollars ($5000.00) per count of conviction.   The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District clerk's Office, P.O. Box 61010, Houston, TX 77208, Attention: Finance.

## Immigration Consequences

5.    Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future.   Defendant's attorney has advised

3

Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

## Waiver of Appeal and Collateral Review

6.   Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed.   Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.   Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255.   In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

7.   In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.   Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a

promise, did not induce his/her guilty plea, and is not binding on the United States,

the Probation Office or the Court.   The United States does not make any promise or

representation concerning what sentence the Defendant will receive.   Defendant

further understands and agrees that the United States Sentencing Guidelines are

effectively advisory to the Court.   *See United States v. Booker*, 543 U.S. 220 (2005).

Accordingly, Defendant understands that, although the Court must consult the

Sentencing Guidelines and must take them into account when sentencing Defendant,

the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant

within the calculated guideline range.

8.   Defendant understands and agrees that each and all waivers contained in

the Agreement are made in exchange for the concessions made by the United States

in this plea agreement.

### The United States' Agreements

9.   The United States agrees to the following:

(a)   If the Court determines that Defendant qualifies for an
adjustment under section 3E1.1(a) of the United States Sentencing
Guidelines, and the offense level prior to operation of section 3E1.1(a)
is 16 or greater, the United States will move under section 3E1.1(b) for
an additional one-level reduction because Defendant timely notified
authorities of his intent to plead guilty, thereby permitting the United
States to avoid preparing for trial and permitting the United States and
the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas and
### the Child Exploitation and Obscenity Section Only

10.   The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the second superseding indictment.   This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, the Child Exploitation and Obscenity Section, and Defendant.   It does not bind any other United States Attorney's Office.   The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

11.   The United States reserves the right to carry out its responsibilities under guidelines sentencing.   Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

6

(d)    to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)    to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

12.   Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.   Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge.   If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run

7

consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

13.  Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)  If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel.  The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)  At a trial, the United States would be required to present witnesses and other evidence against Defendant.  Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them.  In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf.  If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)  At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.  However, if Defendant desired to do so, he could testify on his own behalf.

8

## Factual Basis for Guilty Plea

14.   Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts 1 and 2 of the Second Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts[1] among others, would be offered to establish the Defendant's guilt:

a.   On May 31, 2017, Homeland Security Investigations ("HSI") Special Agent ("SA") Joshua Conrad created the undercover online identity (hereafter "UC1") to access client-server protocol (hereafter "Protocol A") chat rooms hosted on a Protocol A network, "Network 1." Protocol A networks are applications that facilitate communication by text. Protocol A chat rooms are mainly designed for group communication in discussion forums but can also be used for private, one-on-one communications, data sharing, and file sharing.

b.   SA Conrad used this undercover online identity to join and access multiple Protocol A Network 1 chat rooms, all of which were forums for potential targets interested in engaging in sexual activities with minors and/or trafficking in sexually explicit depictions of minors.

c.   While SA Conrad was logged into Chat Room 1 on the Network 1

---

[1] All network, user, and chat room names have been anonymized to protect the ongoing investigation.

server, SA Conrad observed a user, later identified as Charles McCreary, Jr., posting links to third-party file-sharing sites that lead to images of children engaged in sexually explicit conduct. McCreary's username, or nickname, was indicative of a sexual interest in children. McCreary also had chat room administrative rights for Chat Room 1. Other users in the chat room could see McCreary's username.

      d.     Protocol A has two tiers of administrators, a higher tier and a lower tier. The lower tier administrator has the ability to manage and control issues at the chat room level. The higher tier administrator has the ability to manage and control users and issues at the network level. While on Network 1, McCreary was a member of the lower tier. McCreary also had a bot—a computer program that performs automatic, repetitive tasks—set up to automatically post a third-party link every minute to the Chat Room 1 chat room, the majority of which lead to a third-party sites containing an image or video of prepubescent minors engaging in sexually explicit conduct.

      e.     While SA Conrad was logged into Chat Room 1 on the Network 1 server, another user, later identified at Christopher McIntosh, posted links to third-party file-sharing websites that lead to images of children engaged in sexually explicit conduct. This user also had chat room administrative rights for Chat Room 1. Other users in the chat room could see this user's username.

f.       While SA Conrad was logged into Chat Room 1 on the Network 1 server, another user, later identified as Jason Brown, changed chat room modes for other users, which indicated this user too had chat room administrative rights for Chat Room 1. This user posted links to third-party file-sharing websites that led to images of child erotica. Other users in the chat room could see this user's username.

Transition from Network 1 to Network 2

g.       Protocol A's network moderators, or administrators, are charged with the task of enforcing a particular network's rules and, in many cases, improving the network in various ways. Network 1, as one of Protocol A's largest networks, had an active moderator group dedicated to public safety. In or about July 2018, several Network 1 public safety administrators began banning Network 1 chat rooms focused on depictions of children engaged in sexually explicit conduct, including the aforementioned Chat Room 1. On or about July 26, 2018, a post was made to a public website informing users of a new, private Protocol A server, known as "Network 2," and giving instructions on how to access it. The post discussed how Network 2 was a private Protocol A network offering a secure encrypted connection between a server and a web browser, the ability to mask a user's IP address information, and the ability to register a unique username. The post then provided detailed instructions on how to set up and access Network 2 on a user's Protocol A client.

11

h.      Around the time the Network 1 administrators began eliminating chat rooms dedicated to trafficking in depictions of children engaged in sexually explicit conduct, many of the most active users, including McCreary, McIntosh, and Brown, migrated from Network 1 over to the newly-created Network 2. Many of the chat rooms dedicated to trafficking in child sexual exploitation material that had been banned on Network 1 were recreated on Network 2 shortly after it was created. Many of the administrative users then created user names for Network 2 that were very similar, or identical, to those they'd used on Network 1.

i.      On September 28, 2018, SA Conrad logged onto Network 2 and observed the network's welcome message, which listed the "Staff Members" associated with the network. Another user, "AlovingDad" later identified as the Defendant, was listed as a "Network Administrator" for Network 2.

j.      On or about September 28, 2018, at approximately 17:03 hours ET, the Defendant was logged into Chat Room 1 on Network 2. While the Defendant was logged in, McCreary's bot posted a link to a third-party website which, when clicked, lead to an image of a naked prepubescent female laying on a blue carpet exposing her vagina.   This link would have been available to any user logged onto Chat Room 1 on Network 2 at the time, including the Defendant.   While the Defendant was logged in, McCreary's bot posted another link to a third-party website which, when clicked, lead to a close-up image of a naked prepubescent girl's vagina and "LS

12

Models" watermark stamped in the upper-left corner of the image. This link would have been available to any user logged onto Chat Room 1 on Network 2 at the time, including the Defendant. SA Conrad downloaded these images for evidentiary purposes.

k. On or about October 18, 2018, at approximately 02:15 hours ET, the Defendant was logged into Chat Room 1 on Network 2. While the Defendant was logged in, McCreary's bot posted a link to a third-party website which, when clicked, lead to an image of a naked prepubescent female standing on a red carpet exposing her vagina. This link would have been available to any user logged onto Chat Room 1 on Network 2 at the time, including the Defendant. At approximately 02:46 hours ET, while the Defendant was logged in, McCreary's bot posted another link to a third-party website which, when clicked, lead to a closeup image of a naked prepubescent girl's vagina with the "LS Models" watermark stamped in the upper-right corner of the image. This link would have been available to any user logged onto Chat Room 1 on Network 2 at the time, including the Defendant. SA Conrad downloaded these images for evidentiary purposes.

<u>Transition from Network 2 to Network 3</u>

l. On or about February 19, 2019, at approximately 10:48 hours ET, SA Conrad logged into the Network 2 server in an undercover capacity. SA Conrad noticed that there were significantly fewer users logged in to Chat Room 1, typically

13

the most populated, than he had observed during prior undercover sessions. At approximately 10:55 hours ET, a post was made to Chat Room 1 which stated the following, "We would like to inform everyone that [Network 2] will be closing soon for technical reasons. We invite everyone to join us at our new server," and then listed precise technical instructions for joining a new server named "[Network 3]". SA Conrad accessed Network 3 using the given instructions and thereafter observed a welcome screen for Network 3 that emphasized its lack of content oversight.

<u>Identification of the Defendant</u>

m.      On August 28, 2019, HSI Special Agents executed five search warrants, virtually simultaneously, on five individuals who acted as either moderators or network administrators for Network 2 and Network 3, including Charles McCreary, Jr. At that time, McCreary admitted to being a user and administrator on Networks 1, 2, and 3. The investigation revealed that McCreary was the main operator and creator of Chat Room 1 on all three networks. During the time McCreary was involved in these conspiracies, he was residing in the Southern District of Texas.

n.      During a search of the home of another of those individuals, Jason Brown, law enforcement seized several devices containing evidence related to child sexual exploitation offenses that had occurred on Protocol A networks. The investigation revealed that Brown was a network administrator for Network 2 and Network 3. One of the devices seized from Brown's home yielded network

14

administrator log files for Networks 2 and 3 that documented, among other things, chat conversations between administrators, including "AlovingDad" and Brown, as well as other user data that would later be used to help identify what is believed to be "AlovingDad's" real-world identity.

o.      The investigation revealed that network administrators for Networks 2 and 3 created several chat rooms that are only accessible to the network administrators. The network administrators used these administrative chat rooms to assist them in monitoring the networks, the various chat rooms within the networks, user data, and any requests from other network users. "Network Admin Chat Room 1" is a chat room that existed on both networks that allowed the network administrators to have group chat conversations among themselves. A second such chat room, "Network Admin Chat Room 2," is a chat room that existed on both networks that allowed the network administrators to monitor when users joined or quit the network or a particular chat room within it. Network Admin Chat Room 2 also kept a log of the true IP addresses of the users logging in to the networks—that is, the IP address that corresponded to that user's actual physical location (unless the IP address was otherwise disguised by the user). A third such chat room, "Network Admin Chat Room 3," that existed on both networks, allowed the network administrators to monitor and respond to help requests made by regular network users.

15

p.      SA Conrad reviewed information within the Network 2 Admin Chat

Room 1 logs seized from Brown's devices in order to search for information that

could be used to identify the real-world identity of "AlovingDad". As discussed

above, these logs contained private chat conversations between the Network 2

administrators and were only accessible by Network 2 administrators. These logs

showed that another particular user, "Cayne", was considered the so-called owner of

Network 2. This meant that this member had decision-making authority and

founding member status in the Network 2 community. The investigation revealed

that "Cayne" was responsible for paying to make sure that Network 2 continued to

function. SA Conrad also learned that Network 2 was hosted on a server that was

leased by a company owned by another user, later identified as Matthew Dowell,

called "NXT Gaming Solutions." Through the course of the investigation and the

review of the seized administrator chat logs, SA Conrad also learned that several of

the administrators would pay "Cayne" via PayPal to maintain the functionality of

and access to Network 2. On or about September 5, 2018, at approximately 15:21

hours ET, "Cayne" told the members of the Network 2 Admin Chat Room that they

had a new contributor, "AlovingDad". He then said the following: "I would like to

introduce you to NXT Gaming Solutions new financial investor. aka "AlovingDad"

16

>.<"[2] The logs also showed that "AlovingDad" was made a network administrator for Network 2 that same day and that he began performing administrative functions, such as removing problem users from the chat rooms, at that time.

q.      During an interview of Dowell, conducted around the time a search warrant was executed at his residence, Dowell was asked about "Cayne" and about how financial contributions to Network 2 were made. Dowell explained the process and provided to the agents the email address associated with the PayPal account "Cayne" utilized to maintain Network 2, namely: "bigstevedw@hotmail.co.uk." Dowell also explained that members of the network would occasionally pay him, his company, or "Cayne" for the expenses incurred for running the network and/or leasing the server on which Network 2 was hosted. On or about September 23, 2019, SA Conrad served a summons on PayPal for information about transactions related to the email address Dowell provided. PayPal responded with transaction logs pertaining to the account that was associated with the email address Dowell said belonged to "Cayne".

r.      SA Conrad learned from these PayPal logs that, on or about September 8, 2018, there was a payment from one "Joseph Lerner" in the amount of $13.52 to the PayPal account associated with "Cayne" and the "bigsetevedw@hotmail.co.uk"

---

[2] All spelling and grammar errors in direct quotations are presented as found in the original communications.

email address. The PayPal records showed that the paying account also had an email address associated with it, namely: "ald7@protonmail.com". This indicated to SA Conrad that "AlovingDad" was associated with this Protonmail email account.

   s.  On or about October 1, 2019, SA Conrad served a summons on PayPal seeking any information related to this Protonmail email address. PayPal responded with the following information:

> Name: Joseph Lerner
> CCName: ALD7
> Email Address: ald7@protonmail.com
> Time Created: Wed, 05 Sep 2018 17:14:16
> IP address: 196.52.84.8

   t.  SA Conrad ran the 196.52.84.8 IP address through the publicly accessible American Registry for Internet Numbers ("ARIN") and the IP address came back to the company Logicweb, which leases IPs to other companies, including virtual private network services. SA Conrad reviewed the logs associated with Network 2 Admin Chat Room 2 for any information indicating whether IP address 196.52.84.8 had been used on the network. SA Conrad found that "AlovingDad" utilized that same IP address on the same day as Joseph Lerner registered his PayPal account—September 5, 2018—and was using it while that user was connected to Chat Room 1 and Chat Room 2 on Network 2, further suggesting a connection between "AlovingDad" and the PayPal account that paid "Cayne" for the maintenance of Network 2.

u.      As a result of the search warrants executed on August 28, 2019, several electronic devices were also seized from Dowell. During a forensic review of these devices, SA Conrad found several text messages on Dowell's cell phone between Dowell and a contact named "Joseph Cohen," with phone number "818-405-2844," that discussed Network 2. One such text message Dowell sent to "Joseph Cohen," on or about December 22, 2018, stated, "We are fucked now. My landlord spilt water on my laptop so now I have no computer at all and she doesnt have the money to replace it." Logs recovered from that laptop's hard drive showed that Dowell had also posted a message into the Network 2 Admin Chat Room 1 on that same day about this incident. The message, which was posted on or about December 22, 2018, stated, "We have a emergency. A lot. i have no laptop or computer anymore. landlord accidently spilt water on it so now it wont power on and she doesnt have the money to replace it." The forensic review of the seized cell phone also showed that Dowell sent Joseph Cohen another text message about Network 2 on or about January 4, 2019, which stated, "Also ive came up with a idea to better secure the [Network 2 Protocol A network] and keep it online."

v.      SA Conrad determined through his investigation that, during the December 22, 2018, and January 4, 2019, activity referenced above, T-Mobile was the cellular provider for the 818-405-2844 phone number. On or about March 19, 2020, SA Conrad sent a summons to T-Mobile for subscriber information pertaining

19

to that number during the relevant time period. On or about April 8, 2020, T-Mobile

responded with the following subscriber information:

> Name:      XXXX Cohen
> Subscriber Address: 10668 Angel Dreams Ave. Las Vegas, NV 89144
> Account Number: 960046279
> Activation Date: 7/6/2018
> Termination Date: 5/4/2019
> MSISDN Disconnect Reason: Port Out

     w.    After learning that the subscriber had terminated service with T-Mobile

on or about May 4, 2019, SA Conrad subsequently learned that the 818-405-2844

phone number was currently being serviced by Verizon Wireless. On or about March

19, 2020, SA Conrad sent a summons to Verizon Wireless for the current subscriber

information pertaining to that phone number. On or about March 25, 2020, Verizon

Wireless responded with the following subscriber information (which matched the

name and address contained in the T-Mobile response):

> Name:      XXXX Cohen
> Subscriber Address: 10668 Angel Dreams Ave. Las Vegas, NV 89144
> Account Number: 673545310-1
> Mobile Telephone Number (MTN) Effective Date: 5/4/2019
> IMEI: 351751103260850

     x.    On or about April 9, 2020, SA Conrad conducted a check within

CLEAR, a law enforcement database that compiles public records, for address 10668

Angel Dreams Ave in Las Vegas, Nevada. CLEAR listed only two individuals that

recently lived at that address: XXXX Cohen (DOB: XX/XX/1968) and Joseph

Cohen (DOB XX/XX/1978). With regards to Joseph Cohen, CLEAR provided the following information:

> Name: Joseph Cohen
> Date of Birth: XX/XX/1978
> SSN: XXX-XX-4855
> Address: 10668 Angel Dreams Ave Las Vegas, Nevada 89144

y.      After determining that COHEN's address was in Las Vegas, Nevada, SA Conrad recalled that he had previously issued a summons to PayPal for transactions related to Dowell's account. PayPal had responded with transaction logs pertaining to that account. SA Conrad learned from these logs that, on or about September 7, 2018, there was a payment to Dowell's account from one "donate.nxtgamingsolutions.org" in the amount of $250. SA Conrad subsequently issued a summons to PayPal for transactions related to the "donate.nxtgamingsolutions.org" email address. PayPal responded with the transaction logs pertaining to that account. The logs showed that there was only the one transaction associated with this email address: a $250 payment made to Dowell's account with a prepaid Visa gift card issued by Bancorp Bank on or about September 7, 2018. (This was approximately two days after "Cayne" introduced "AlovingDad" to the Network 2 administrators as a new "financial investor," as detailed above.) SA Conrad contacted Bancorp who directed SA Conrad to Incomm Inc., a payment technology company, in order to learn about the card's activation history. In

response to his request, Incomm provided SA Conrad with the following information:

> Card Number: Ending in 0203
> Card Type: Vanilla Visa Int'l
> Merchant Purchased: CVS Pharmacy
> Merchant Address: 10400 West Charleston Boulevard Las Vegas, NV 89135
> Card Activation Credit: $250
> Date/Time Card Activated: 9/7/2018 @ 2:16 PM XXX
> Date/Time First Used: 9/7/2018 @ 3:51 PM (PayPal – nxtgamingsolutions)

z.     SA Conrad learned through subsequent investigation that the CVS where this gift card was purchased is approximately 2.7 miles from the Defendant's address.

aa.     On or about March 26, 2020, SA Conrad conducted a check with the United States Department of State for any passport applications for a "Joseph Cohen" with a birth date matching the one contained in the CLEAR report. This check yielded the following information:

> Name: Joseph Chaim Cohen
> Address: 10668 Angel Dreams Avenue, Las Vegas, NV 89144
> Date of Birth: XX/XX/1978
> SSN: XXX-XX-4855
> Place of Birth: Las Vegas, NV
> Phone Number: 818-405-2844
> Email: jcohentech@gmail.com
> Mother's Maiden Name: Lerner

bb.      On June 23, 2020, agents executed a federal search warrant at Cohen's residence in Las Vegas, NV.   Agents seized various electronic devices including an Aero 17 laptop (S/N: 20110J000184) (Li002), a Maxtor IDE hard drive (S/N: Y41KZ8NE) and a Hitachi IDE hard drive (S/N: C4G7RB7K).      Agents encountered the Defendant shortly after and seized his Samsung SM-G875 Galaxy S10 Plus cellphone.   Agents obtained a search warrant for that device.   A forensic examination was performed on all of those devices and agents found 540 images and 42 videos of child pornography on the Maxtor hard drive, 93 images and 19 videos of child pornography on the Hitachi hard drive and 4 images of child pornography on the cellphone.   Some of the child pornography is of known victims as identified through the National Center of Missing and Exploited Children.   On the laptop agents found numerous references to IRC client applications and search terms of interest such as "baby," "incest" and "mother_and_son".   Additionally, agents found several images and videos of cartoon-like depictions of children engaged in sex acts on the Defendant's cellphone.

cc.      On January 27, 2022, SA Conrad obtained a federal search warrant for the Defendant's Google account associated with "ald7@protonmail.com".   The search warrant return lists the date of birth for the subscriber as the same date of birth as the Defendant's.   Additionally, the Defendant wrote an email dated December 20, 2017, in which the subject line is "Hi from ALovingDad."

23

dd.    The Defendant, while logged into his account, searched for: http://nxtgamingsolutions.org, which is the host server company owned by Dowell and used to run Network 2 during the conspiracy; http://www.undernet.org/servers, which is the webpage for Network 1; "list of internet relay chat commands – Wikipedia" which would give user and operator commands for IRC chatrooms and networks, "irc kik" which is an operator command to remove a user from a chatroom, and "irc ban" which is an operator command to ban a user based on an IP Address or username from a chatroom.

ee.    The Defendant's participation in these conspiracies was conducted via the Internet, a means and facility of interstate and foreign commerce. All networks and chat rooms were accessed via the Internet.

## Breach of Plea Agreement

15.   If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.   Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

16.   This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest.   Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

17.   Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14

days of signing this plea agreement.   Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18.   Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer.   Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

19.   Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

**Restitution**

20.   Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction.   Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss in an amount to be determined either before sentencing or within 90 days of the sentencing hearing.

26

Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s).   Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

### Forfeiture

21.    Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.   In particular, but without limitation, Defendant stipulates that the following specific property is subject to forfeiture:

a Samsung SM-G875 Galaxy S10 Plus cellular phone;

an Aero 17 laptop (S/N: 20110J000184) (Li002);

a Maxtor IDE hard drive (S/N: Y41KZ8NE); and

a Hitachi IDE hard drive (S/N: C4G7RB7K).

22.   Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

23.   Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

24.   Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

25.   Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Notification of the Sex Offender Registration and Notification Act

26.   Defendant has been advised, and understands, that under the Sex Offender Registration and Notification Act, a federal law, he must register and keep the registration current in each of the following jurisdictions: where he resides; where he is an employee; and where he is a student.   The Defendant understands that the requirements for registration include providing his name, his residence

28

address and the names and addresses of any places where he is or will be an employee or a student, among other information. The Defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three (3) business days after any change of residence, employment, or student status. Defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

## Complete Agreement

27. This written plea agreement, consisting of 32 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

28.   Any modification of this plea agreement must be in writing and signed

by all parties.

Filed at ___Houston___, Texas, on ___June 2___,

2022.

_____
Defendant

Subscribed and sworn to before me on ___June 2___,

2022.

NATHAN OSCHNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:
JENNIFER B. LOWERY
United States Attorney

By: _____          _____
Kimberly Ann Leo                                  John T. Floyd
Assistant United States Attorney         Attorney for Defendant
Southern District of Texas

30

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:19-CR-719-S2** |
| | § | |
| **JOSEPH COHEN,** | § | |
| **Defendant** | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his/her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Attorney for Defendant

_____
Date   06/2/22

31

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me.   My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.   I have read or had read to me and carefully reviewed every part of this plea agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.

_____          _____ 6/2/22 _____
Defendant                                     Date

32